UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| LEN CLINE, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>FRANK M. DEJIULIO & ASSOCIATES, INC. d/b/a ASB FINANCIAL<br><br>        Defendant. | No. 3:21-cv-00223-TJC-MCR |

**FIRST AMENDED CLASS ACTION COMPLAINT**

      Plaintiff Len Cline ("Plaintiff" or "Cline") brings this Class Action Complaint and Demand for Jury Trial against Defendant Frank M. Dejiulio & Associates, Inc. doing business as ASB Financial ("Defendant" or "ASB Financial") to stop the Defendant from violating the Telephone Consumer Protection Act by placing multiple calls to consumers without consent, including those who registered their phone numbers on the National Do Not Call registry ("DNC") and who expressly requested that the phone calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Cline, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

    1.    Plaintiff Len Cline is a resident of Satsuma, Florida.

    2.    Defendant is a company registered to business in Florida and throughout this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is registered to do business in this District and the wrongful conduct giving rise to this case was directed into and received in this District.

## INTRODUCTION

5. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry provides for consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the DNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

2

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in April 2021 alone, at a rate of 147.6 million per day. www.robocallindex.com (last visited May 6, 2021).

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

16. ASB Financial sells insurance and financial products to consumers, including final expense insurance.

17. As part of its business practice, ASB Financial agents place solicitation calls to consumers in order to solicit them to purchase Defendant's products.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

18. Unfortunately, these unsolicited phone calls are being made to consumers without their express written consent, who do not have an existing business relationship with Defendant, and to consumers who registered their phone number on the DNC.

19. In the careers page on the ASBFinancial.com website, Defendant informs potential hires that it maintains a full-time telemarketing team:



20. In addition, numerous ASB Financial employees have posted complaints online about the cold calling they had to engage in so they could generate business, including:



---
[3] https://www.indeed.com/cmp/Asb-Financial/reviews

> **4.0** ★★★★☆ **You'll get out what you put in.**
>
> Insurance Specialist (Current Employee) - Boca Raton, FL - February 19, 2021
>
> Good place to work if you want to work hard. Its not for everyone and there are days when you might get discouraged but overall its a nice place to work and its up to you to make the effort. <u>Cold calling can be difficult at times</u> and covid has cut out the ability to do some real networking but overall its what you put in that you get out.
>
> ✓ **Pros**
> Flexibility, youre your own boss basically.
>
> ✗ **Cons**
> <u>Cold calling.</u> [4]

> **1.0** ★☆☆☆☆ **Tricked Seniors into getting products they don't need**
>
> Insurance Agent (Former Employee) - Tampa, FL - February 12, 2019
>
> <u>Your typical day starts with the phones and you cold call for hours</u> unless you have appointments. Then you go to your appointments. Most of the leads you have to furnish yourself or they are recycled through the office. If a manager helps you with a sell they take part of the commission. Its cut throat and the customer is not the priority. [5]

21. Furthermore, Defendant and its call center lack a sufficient stop call system that results in the Defendant continuing to place unsolicited calls to consumers who have requested from the Defendant that the phone calls should stop.

22. For example, in Plaintiff Cline's case, Defendant placed 3 unsolicited calls to his cell phone number registered on the national do not call registry, despite him never giving Defendant his express written consent to receive such calls and despite requesting that Defendant stop calling his cell phone.

23. Plaintiff Cline does not yet know whether the unsolicited phone calls were placed by ASB Financial employees or a third-party call center that places calls on behalf of Defendant ASB Financial.

24. Based on the foregoing, assuming that the calls were placed by a third-party call center, that call center was authorized by ASB Financial to act on ASB Financial's behalf with

---

[4] *Id.*
[5] *Id.*

respect to the telemarketing phone calls to consumers described above. In addition and/or in the alternative, the third-party call center had apparent authority to act on Defendant's behalf with respect to the telemarketing phone calls to consumers described above. In addition and/or in the alternative, Defendant ASB Financial ratified the making of the telemarketing calls described above. Indeed, ASB Financial knew that a third-party telemarketer places outbound telemarketing calls to consumers nationwide on behalf of ASB Financial, to sell insurance and financial products, without prior express written consent, or otherwise had knowledge of facts that would have led a reasonable person to investigate further, and yet ASB Financial ratified this conduct without further investigation. In addition and/or in the alternative, ASB Financial was negligent in supervising the making of the telemarketing calls described above. Accordingly, ASB Financial is responsible for the making of the telemarketing calls described above.

25. The Federal Communication Commission has instructed that corporations such as ASB Financial may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if[s] often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

26. In response to these unsolicited phone calls, Plaintiff Cline files this lawsuit seeking monetary and injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF CLINE'S ALLEGATIONS

27. Plaintiff Cline registered his cell phone number on the DNC on December 22, 2011.

28. Plaintiff Cline's cell phone number is not associated with a business and is used for personal use only.

29. On February 16, 2021, Plaintiff Cline received an unsolicited phone call to his cell phone from or on behalf of Defendant from phone number 386-515-1893 at 4:27 PM.

30. Plaintiff answered this call and heard a noticeable pause before a live employee came on the line.

31. The live employee claimed that he was working for (undecipherable) "Benefit."

32. When Plaintiff asked the employee to repeat the company name, the employee repeated the name too quickly for Plaintiff to hear clearly and went into a seemingly scripted sales pitch regarding final expense insurance.

33. Plaintiff told the employee that he is not interested and that his phone number is registered on the DNC.

34. Plaintiff then told the employee not to call his phone number again and ended the call.

35. Based on an investigation conducted by Plaintiff's attorneys, 386-515-1893 appears to be a spoofed number.

36. Despite a clear stop request, Plaintiff received a 2nd unsolicited call from or on behalf of the Defendant on February 16, 2021 at 4:44 PM from the phone number 386-579-3542.

37. As with the previous call, this call was regarding final expense insurance.

38. The live agent began the call identifying the company name as (unintelligible) "Benefit."

39. Plaintiff asked the agent to repeat the company name, but he was not able to hear the name clearly as it was spoken so quickly.

7

40. Plaintiff feigned interest in order to determine which company was calling him in order to get the calls stopped and to identify the telemarketer.

41. Plaintiff answered some qualifying questions and was told that the employee would transfer him to a licensed insurance agent.

42. Plaintiff was then transferred to the insurance agent who identified himself as Ray Espada from ASB Financial regarding final expense insurance.

43. Plaintiff hesitated when it came time to pay for the insurance plan, so when the phone conversation ended, Espada sent Plaintiff an email with an introduction regarding ASB Financial and an application to get final expense insurance from Sons of Norway.

44. The email that Plaintiff received clearly shows that Espada is an employee working for ASB Financial:

> From: **Raymond Espada** <ray@asbfinancial.com>
> Date: Tue, Feb 16, 2021 at 5:31 PM
> Subject: Final Expense Application and My Credentials
> To: bubbasjukeboxhangout@gmail.com <bubbasjukeboxhangout@gmail.com>
>
> Hello John
>
> My name is Ray Espada, a Florida Licensed Retirement Specialist with ASB Financial who works with families and retirees every day. Attached is our Company Resume and here is the link to my BIO: raymondespada.myasbfinancial.com.
>
> Peace of Mind for one's family is a wonderful gift and much more simple to attain than most people realize. This is a no-pressure service, and I would welcome the opportunity to meet with you, a loved one or a Neighbour who may need my assistance.
>
> Best regards,
>
> **Ray Espada**
>
> **Licensed Professional**
> **License W515806**
> Office:    (352) 368-7501
> Mobile: (352) 857-2735
> ray@ASBfinancial.com

45. The website in the email myasbfinancial.com connects to a webpage which states "Welcome to MAX. A Prospecting System Designed Exclusively for American Senior Benefits."



46. Based on an investigation by Plaintiff's attorney, this phone number 386-579-3542 appears to be a spoofed number.

47. On February 20, 2021 at 3:14 PM, Plaintiff received a 3rd unsolicited call from or on behalf of Defendant from the phone number 386-520-1514.

48. The caller was also soliciting final expense insurance like the previous calls.

49. The agent identified the company name as "Senior Benefit."

50. Plaintiff told the agent not to call again and hung up the phone.

51. Based on an investigation conducted by Plaintiff's attorneys on February 21, 2021, 386-520-1514 also appears to be a spoofed number.

52. Plaintiff Cline believes that all 3 of the unsolicited calls were made by or on behalf of ASB Financial, as each call was regarding final expense insurance and each call was identified by a name followed by "Benefit."

53. Plaintiff never provided consent to Defendant or its agents to place calls to his cell phone number.

54. Plaintiff was not looking to inquire about or purchase final expense insurance.

55. The unauthorized solicitation phone calls that Plaintiff received from or on behalf of Defendant, as alleged herein, have harmed Plaintiff Cline in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

56. Seeking redress for these injuries, Plaintiff Cline, on behalf of himself and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited phone calls to cellular telephones that are registered on the DNC and otherwise prohibits companies from placing calls if they fail to implement adequate policies and procedures for maintaining an internal do not call list.

## CLASS ALLEGATIONS

57. Plaintiff Cline brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of the Defendant) called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom Defendant claims they obtained the person's number in substantially the same manner as it obtained the Plaintiff's number.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, and (4) for whom Defendant claims they obtained the person's number in substantially the same manner as it obtained the Plaintiff's number.

58. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors;

(3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Cline anticipates the need to amend the Class definitions following appropriate discovery.

59. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

60. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant or its agents systematically placed multiple solicitation calls to Plaintiff and other consumers whose telephone numbers were registered with the DNC without first obtaining clear and conspicuous consent to place the calls;

(b) whether Defendant's phone calls to Plaintiff and other consumers were made for telemarketing purposes;

(c) whether Defendant or its agents placed telemarketing solicitation calls to consumers after being instructed to stop calling;

(d) whether the Defendant or its agents engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(e) whether Defendant's conduct constitutes a violation of the TCPA;

(f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

61. **Adequate Representation**: Plaintiff Cline will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Cline has no interests antagonistic to those of the Classes, and Defendant

has no defenses unique to Plaintiff. Plaintiff Cline and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Cline nor his counsel have any interest adverse to the Classes.

62.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Cline. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Registry Class)**

63.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 62 as if fully set forth herein.

64.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

65.     Any "person who has received more than one telephone call within any 12-month

period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

66. Defendant or its agents violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

67. Defendant or its agents violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one phone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

68. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

69. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Internal Do Not Registry Class)**

70. Plaintiff incorporates by reference the allegations of paragraphs 1 through 62 as if fully set forth herein.

71. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing

13

calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not

to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

72. Defendant or their agents placed phone calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

73. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

74. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Cline individually and on behalf of the Classes, prays for the following relief:

75. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Cline as the representative of the Classes; and appointing his attorneys as Class Counsel;

76. An award of actual and/or statutory damages and costs;

77. An order declaring that Defendant's actions, as set out above, violate the TCPA;

78. An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

79. Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Cline requests a jury trial.

DATED this 6th day of May, 2021.                **LEN CLINE**, individually and on behalf of all others similarly situated,

/s/ *Avi R. Kaufman*
Avi R. Kaufman (FL Bar no. 84382)*
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
*Trial Counsel*

Stefan Coleman (FL Bar No. 30188)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, Fl 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Counsel for Plaintiff and all others similarly situated*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 6, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ *Avi R. Kaufman*